## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | : | **CIVIL ACTION NOS. 19-cv-0163** |
| **EDWARD THOMAS KENNEDY,** | : | **19-cv-0212** |
| **Plaintiff,** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **January 25, 2019**

Edward Thomas Kennedy of Breinigsville, Lehigh County filed at least eleven federal lawsuits in 2018, and now two already in 2019, almost always challenging the same issues: conduct in Lehigh County in Summer 2017; disputes with the federal government and its agencies regarding his taxes; and, habitation disputes concerning his residence. Along with several of our colleagues, we dismissed these eleven 2018 lawsuits. He files these cases without incurring a dime because he swears to being a pauper allowing him (under Congress' mandate) to file a federal court case without paying the $400 in filing and administrative fees for each case ($4,400 in lost fees alone in 2018). In early 2019, Mr. Kennedy filed two lawsuits before us today challenging conduct already reviewed and dismissed in this Court including now suing the opposing lawyers in one of his dismissed cases. Again, he swears to his pauper status requiring we allow him to file these two cases without paying the fees. He burdens the public servants with repetitive frivolous cases without incurring a single cost. We grant him *in forma pauperis* status today for these two cases. We today dismiss these two new cases. And to ensure we more effectively preserve the public resources consistent with Congressional mandate, we require Mr. Kennedy show cause as to why we should allow him to file cases on duplicative fact patterns unless he is in imminent danger without paying the fees required from every other citizen.

## I. Mr. Kennedy's dismissed *in forma pauperis* cases.

### A. Mr. Kennedy filed eleven cases in 2018 based on three fact patterns.[1]

#### 1. *Kennedy v. Commissioner*, No. 18-257

On January 18, 2018, Mr. Kennedy sued the Commissioner of the Internal Revenue Service, an IRS John Doe employee, Equifax, and its Chief Executive Officer Richard F. Smith.[2] On January 31, 2018, Judge Leeson dismissed Mr. Kennedy's claims against Equifax and Mr. Smith as duplicative of claims he raised in Civil Action No. 18-214, which Mr. Kennedy filed two days earlier.[3] Mr. Kennedy alleged IRS officials intentionally inflicted emotional distress upon him when the IRS sent him a letter informing him he owed $75,957.35 in unpaid federal taxes. The United States appeared as the real party in interest and in place of the Commissioner and John Doe.

On June 18, 2018, Judge Leeson granted the United States' motion to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.[4] Judge Leeson concluded Mr. Kennedy's claim could not be brought under the Federal Tort Claims Act because the United States had not waived its sovereign immunity with respect to torts arising from the collection of taxes.[5]

#### 2. *Kennedy v. Hanna*, No. 18-977

On March 6, 2018, Mr. Kennedy sued Lehigh County Sheriff employees alleging multiple officers, including Sheriff Joseph Hanna, surrounded his residence and threatened to arrest him using extreme force on June 2, 2017.[6] He alleged Lehigh County deputy sheriffs assaulted and falsely imprisoned him in the parking lot of a Target store on August 28, 2017.[7] He also alleged, while being held at the Lehigh County Jail, defendants subjected him to rectal examinations, non-consensual medical examinations, and imprisonment in solitary confinement.[8] On March 23,

2

2018, Judge Jones granted Mr. Kennedy leave to proceed *in forma pauperis* and directed service of his Complaint.[9] After dozens of docket entries, a dismissal and an unsuccessful appeal, the docket reflects this case is now dismissed. The docket reflects attorneys David Backenstoe and David J. MacMain represented various defendants, apparently leading to Mr. Kennedy suing them now in one of today's cases.

**3.** ***Kennedy v. Commonwealth*, No. 18-3374**

On August 8, 2018, Mr. Kennedy sued the Commonwealth of Pennsylvania and Governor Tom Wolf[10] for the same things he sued the Lehigh County Sheriff relating to conduct in Summer 2017 in No. 18-977.[11] On August 24, 2018, Judge Jones granted Mr. Kennedy leave to proceed *in forma pauperis* and dismissed his Complaint.[12] Judge Jones found the Commonwealth of Pennsylvania entitled to Eleventh Amendment immunity, and nothing in the Complaint "plausibly suggest[ed] that Governor Wolf either maintained a policy or custom which caused the alleged harm or had any personal involvement in the events Kennedy describes."[13] Judge Jones also dismissed claims arising from the events involving Lehigh County agents without prejudice to Mr. Kennedy proceeding in the earlier filed No. 18-977.[14] Judge Jones declined leave for Mr. Kennedy to file an amended complaint.

**4.** ***Kennedy v. Jones*, No. 18-3442**

On August 13, 2018, Mr. Kennedy sued Brian S. Jones, the IRS, William M. Paul, Bruce K. Meneely, Nancy B. Romano, Harry J. Negro, Douglas H. Shulman, Mark W. Everson, Charles O. Rossotti, John Koskinen, David J. Kautter, R.B. Simmons, and Michael Wright, raising state law claims challenging the IRS's placement of liens on his assets due to balances owed for taxable years 2006 and 2007.[15] On September 21, 2018, Judge Smith granted Mr. Kennedy leave to proceed *in forma pauperis* and dismissed his Complaint for lack of subject matter jurisdiction.[16]

3

Judge Smith held the Court lacked jurisdiction to consider claims seeking review of the Tax Court's decision dismissing a petition Mr. Kennedy had filed there "because the Courts of Appeals have exclusive jurisdiction to review decisions of the Tax Court."[17] Judge Smith also found Mr. Kennedy failed to "include sufficient allegations to invoke this court's diversity jurisdiction because he has not included any allegations about the citizenship of any defendant and the IRS is entitled to sovereign immunity."[18] Judge Smith granted Mr. Kennedy leave to file an amended complaint in light of his *pro se* status.[19]

Mr. Kennedy filed an amended complaint on September 26, 2018, suing the IRS, Brian S. Jones, William M. Paul, Bruce K. Meneely, Nancy B. Romano, Harry J. Negro, David John Kautter, R.B. Simmons, Michael Wright, the Commonwealth of Pennsylvania, the United States Department of the Treasury, the Office of Treasurer of the United States, the United States Postal Service, Steven Terner Mnuchin, Jovita Carranza, Megan Brennan, and Thomas Marshal as Defendants.[20] His amended complaint largely copied from the original dismissed complaint and asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Fair Debt Collection Practices Act ("FDCPA"), and various state law torts. On November 14, 2018, Judge Smith dismissed Mr. Kennedy's amended complaint.[21] Judge Smith found Mr. Kennedy failed to state a claim for relief under RICO and the FDCPA, and he lacked standing to raise a claim the defendants failed to provide a republican form of government.[22] Judge Smith declined to exercise supplemental jurisdiction over Mr. Kennedy's state law claims and found he had again failed to meet his burden of demonstrating subject matter jurisdiction over those claims.[23] Judge Smith denied Mr. Kennedy leave to file a second amended complaint.[24]

4

## 5. *Kennedy v. Getz*, No. 18-3532

Undeterred by the Court's dismissal in No. 18-3374, on August 20, 2018, Mr. Kennedy returned to his theme of damages arising from the Lehigh County Sheriffs' conduct in Summer 2017 by now suing Bradley J. Getz, Richard H. D'Ambrosia, Robert Evanchick, the Pennsylvania State Police, Judge Malachy Edward Mannion, Magistrate Judge William I. Arbuckle, the Pennsylvania Bar Association, the Unified Judicial System of Pennsylvania, Chief Justice Thomas Saylor, Philip Carl Petrus, Richard Charles Clink, Thomas B. Darr, and the Administrative Office of the Pennsylvania Courts.[25] Once again, Mr. Kennedy referenced the events of June 2, 2017 and August 28, 2017 in Lehigh County, as well as his imprisonment from August 28-30, 2017.[26] Specifically, Mr. Kennedy alleged "Getz and others" injured him on June 2, 2017 and all the Defendants kidnapped him on August 28, 2017.[27] But he adds Mr. Petrus and Mr. Clink injured him during court proceedings in Frackville and Port Carbon, Pennsylvania.[28] Mr. Kennedy contended Chief Judge Saylor, Judge Mannion, and Magistrate Judge Arbuckle "(probably) obstructed justice in these matters by their failure to respond to Kennedy's complaints, and by the Mannion/Arbuckle 'Order' found at Exhibit 5."[29] He also faulted those individuals, as well as Mr. Evanchick, Mr. Clink, and Mr. Petrus, for "ignor[ing his] Common law petition to vacate a void judgment."[30]

On August 27, 2018, Judge Schmehl granted Mr. Kennedy leave to proceed *in forma pauperis* and dismissed this Complaint.[31] Judge Schmehl found Mr. Kennedy maliciously filed this case because he was once again seeks damages for events in Lehigh County occurring on June 2, 2017, August 28, 2017, as well as his incarceration from August 28-30, 2017.[32] Judge Schmehl further concluded Mr. Kennedy failed to state a civil conspiracy claim under 42 U.S.C. § 1983, and he could not proceed on his § 1983 claims against several of the defendants because they were

either entitled to Eleventh Amendment immunity or absolute judicial immunity.[33] Judge Schmehl denied Mr. Kennedy leave to file an amended complaint.

Judge Schmehl also placed Mr. Kennedy on notice "filing another new case regarding these same events [in Lehigh County] may result in restriction of his filing privileges."[34]

## 6. *Kennedy v. Romano*, No. 18-3648

On August 24, 2018, Mr. Kennedy sued Nancy B. Romano, Brian S. Jones, William M. Paul, Bruce K. Meneely, Harry J. Negro, Douglas H. Shulman, Mark W. Everson, Charles O. Rossotti, John Koskinen, David J. Kautter, Megan J. Brennan, Thomas J. Marshall, Steven Terner Mnuchin, and the IRS Office of Chief Counsel.[35] Mr. Kennedy now alleged various state law claims alleging the defendants, all of whom were current or former employees of the Department of the Treasury or the Internal Revenue Service, provided false information about him to the Social Security Administration, which affected his benefits.

On September 24, 2018, Judge Smith granted Mr. Kennedy leave to proceed *in forma pauperis* and dismissed his Complaint because Mr. Kennedy failed to establish subject matter jurisdiction.[36] Judge Smith granted Mr. Kennedy leave to file an amended complaint.[37] On November 9, 2018, Judge Smith dismissed this case after Mr. Kennedy failed to file an amended complaint.[38]

## 7. *Kennedy v. University of Notre Dame Du Lac*, No. 18-3747

On August 27, 2018, Mr. Kennedy sued in the United States District Court for the Northern District of Illinois against the University of Notre Dame du Lac, John I. Jenkins, Notre Dame Law School, the American Bar Association, the American Bar Association Board of Governors, Nell Jessup Newton, the Commonwealth of Pennsylvania, the Pennsylvania Bar Association, John Brennan, the Law School Admissions Counsel, Leanne M. Shank, and Kellye Teste, essentially

6

claiming he should have been granted admission to various law schools despite not taking the Law School Admission Test.[39] The Northern District of Illinois transferred the matter to this Court on August 30, 2018. On September 12, 2018, Judge Jones granted Mr. Kennedy leave to proceed *in forma pauperis* and dismissed his Complaint as legally frivolous.[40] Judge Jones found Mr. Kennedy premised his Complaint "on legal conclusions and phrases that do not shed any light on how [Kennedy] was legally wronged by virtue of the denial of his law school applications."[41] Mr. Kennedy did not appeal.

## 8. *Kennedy v. Commonwealth of Pennsylvania*, No. 18-4071

On September 10, 2018, Mr. Kennedy sued the Commonwealth of Pennsylvania challenging a Pennsylvania statute criminalizing harassment,[42] alleging 18 Pa. Cons. Stat § 2709 is unconstitutional because it "exceeds the Defendant's jurisdiction, and because it exceeds the Commonwealth of Pennsylvania state government's jurisdiction, the Plaintiff (and all of we the people) is injured in loss of rights."[43]

On September 27, 2018, Judge Pappert granted Mr. Kennedy leave to proceed *in forma pauperis* and dismissed his Complaint for lack of standing, finding nothing in the Complaint "provides a basis for concluding [Kennedy] has standing to challenge the statute in question."[44] Judge Pappert provided Mr. Kennedy an opportunity to file an amended complaint. Rather than filing an amended complaint, Mr. Kennedy filed an appeal which is now subject to dismissal (since October 18, 2018) due a jurisdictional defect.

## 9. *Kennedy v. Monsanto Company*, No. 18-4086

On September 21, 2018, Mr. Kennedy sued the Monsanto Company, Hugh Grant, the Commonwealth of Pennsylvania, the PPL Corporation, Joanne H. Raphael, Crawl Space Repair, Dennis Koze, and Kate E. M. Tercha, raising claims regarding various conditions at his

7

residence.[45] Mr. Kennedy alleged on September 17, 2018, he received seven communications from Mr. Koze, in which Mr. Koze "accused [him] of crimes, and threatened [him] with eviction based on his allegation of crimes by [Kennedy]."[46] He also alleged Mr. Koze and Ms. Tercha failed to provide him "with a private, secure mailbox," causing him to not receive "legal papers from a court of law because there is no secure U.S. mail delivery" for him at the home.[47] He further asserted because of the lack of secure mailboxes, "other tenants are aware of [his] private legal, health and financial matters."[48]

Mr. Kennedy went on to complain about the living conditions at his home. He alleged Mr. Koze "practices medicine without a license in the shared space community room, and the medical devices such a[s] syringes used to draw human blood from patients by Koze do not comply with government regulations."[49] According to Mr. Kennedy, the "shared space kitchen and bathroom are unsanitary and are no longer kept clean, and may be at times contaminated from the unsterilized medical equipment and devices, which are also not disposed properly."[50] He also alleged "[m]odern [f]ire protection is non-existent" at the residence.[51] Mr. Kennedy further complained "[l]ead and other toxins are present in the . . . ceiling and walls," and there is mold in the kitchen.[52] He indicated "[c]urrent tenants cough often, and may have severe health problems due to the toxins."[53]

Mr. Kennedy also alleged his residence has exposed electrical wires which "violate national standards and are a probable fire hazard, and do not comply with modern building codes."[54] He is "harmed by radiation from PPL Corporation Smart Meter, which is located proximate to [his] room on the second floor."[55] Mr. Kennedy also complained about Mr. Koze's Crawl Space Repair business, which "burns toxic materials including but not limited to rotted beams, damaged floor joists, sill plates, box sills, old damaged insulation, and mildew and fungus

8

growth from his customer[s'] homes."[56] Mr. Kennedy also asserted Ms. Tercha, as part of her farming operations, uses "toxic chemicals from Defendant Monsanto Company," and he has been injured by the fumes.[57] Mr. Kennedy also faulted Mr. Koze for "falsely advertis[ing] [the] conditions of the rental on craigslist.com in the Fall of 2016."[58]

Mr. Kennedy alleged ten claims: (1) trespass; (2) trespass on the case; (3) trespass on the case—vicarious liability; (4) intentional infliction of emotional distress; (5) negligence; (6) failure to provide safe living conditions; (7) failure to provide safe health conditions; (8) privacy violations; (9) failure to comply with US postal regulations; and (10) false advertising.[59] He asserted he was invoking this Court's diversity jurisdiction, and requested declaratory and injunctive relief, as well as damages.[60]

On September 26, 2018, Judge Schmehl dismissed Mr. Kennedy's complaint for lack of subject matter jurisdiction, finding Mr. Kennedy failed to plead complete diversity among the parties.[61] Judge Schmehl did not give Mr. Kennedy leave to file an amended complaint, noting he could refile his claims in state court.[62]

**10.** *Kennedy v. Commonwealth*, **No. 18-4310**

Undeterred by the Court's dismissing his theories in No. 18-4086, Mr. Kennedy again sued the Commonwealth of Pennsylvania, the PPL Corporation, Joanne H. Raphael, Crawl Space Repair, Dennis Koze, Kate E.M. Tercha, Brian Seidel, Annett Hunter, Shirley M. Swavely, Kermit A. Ritter, Clyde Elliott Deal, the Monsanto Company, and Hugh Grant.[63] In this complaint, Mr. Kennedy reiterated the allegations and causes of actions he previously asserted – and this Court dismissed - in No. 18-4086.[64] Mr. Kennedy only added Brian Seidel, Annette, Hunter, Kermit A. Ritter, Clyde Elliot Deal, and Shirley M. Swavely "are unwilling co-plaintiffs, and current or

9

former tenants at" the residence.[65] Mr. Kennedy "believe[d] said un-willing co-plaintiff defendants have or had the same and/or rental terms and conditions agreement" as he does.[66]

On October 12, 2018, Judge Schmehl dismissed Mr. Kennedy's Complaint as malicious, noting it "once again raise[d] claims that Kennedy has asserted in [a] previous lawsuit[]."[67] Judge Schmehl also noted, "to the extent Kennedy [was] naming Seidel, Hunter, Ritter, Deal, and Swavely as co-plaintiffs, as a non-attorney proceeding *pro se*, he may not represent these individuals in this matter or raise claims on their behalf."[68] Judge Schmehl denied Mr. Kennedy leave to file an amended complaint.[69]

In light of his filing history and as he did in No.18-3532, Judge Schmehl also placed Mr. Kennedy on notice "filing new cases regarding these same events [tenancy issues], or other events that Kennedy has alluded to in previous lawsuits, may result in restriction of his filing privileges."[70]

## 11. *Kennedy v. Leeson*, No. 18-4414

So he decided to sue the Judges who dismissed his frivolous cases. On October 11, 2018, Mr. Kennedy sued Judges Leeson, Jones, Smith, Pappert, Schmehl, and Chief Judge Smith of the United States Court of Appeals for the Third Circuit.[71] Mr. Kennedy pled he was "summoning" the Judges "to answer and declare or swear under penalty of perjury the said in a plea of trespass, trespass on the case, trespass on the case-vicarious liability, and failure to provide a republican form of government."[72] Mr. Kennedy sued because these judges dismissed his cases while serving as judges.

On October 17, 2018, we granted Mr. Kennedy leave to proceed *in forma pauperis* and dismissed his Complaint, noting the Judges are entitled to judicial immunity for their decisions dismissing his cases.[73]

10

**B. Mr. Kennedy's allegations before us today.**

**1.** *Kennedy v. County of Lehigh*, **No. 19-163**

On January 10, 2019, and ignoring Judge Schmehl's August 27, 2018 Order in No. 18-3532, Mr. Kennedy returned to the events in Lehigh County in Summer 2017 and sued Lehigh County, Upper Macungie Township, the MacMain Law Group LLC, David J. MacMain, Matthew J. Connell, Brian H. Leinhauser, David M. Backenstoe, and Joseph N. Hanna. As noted above, Attorneys David Backenstoe and David J. MacMain are representing various Defendants in No. 18-977. Mr. Connell and Mr. Leinhauser are partners of Attorney MacMain with MacMain Law Group LLC.[74]

Mr. Kennedy alleges this 2019 case "is unique and distinct from other cases and claims made by [him] in E.D. Pa. and includes the fact that the government, its counsel and other defendants exceeded their jurisdiction, and damaged Kennedy, and injured Kennedy in loss of rights in matters in Lehigh County, Pennsylvania, from approximately June 1, 2017 to the present time."[75] He contends all of the defendants, especially Mr. Hanna, "(probably) also committed treason, under military law, now effective as of January 1, 2019."[76] Mr. Kennedy claims Mr. Hanna "carried [him] away without permission, to County of Lehigh prison."[77] He also believes Mr. Hanna "enforces Sharia Law and not US law, based on hearsay evidence."[78]

Mr. Kennedy alleges the Defendants violated RICO from 2008 until the present by "misstat[ing], misinform[ing] and fil[ing] fake financial records on government websites, supported by self-authenticating digital evidence under Rule 902."[79] He also takes issue with various actions in No. 18-977. For example, Mr. Kennedy faults opposing counsel Attorneys MacMain and Backenstoe for dishonoring his offers to settle.[80] He claims Attorneys MacMain and Backenstoe violated his privacy rights by failing to redact certain information, such as his

11

"Ecclesiastical Number and diplomatic passport number," as well as his date and place of birth.[81] Mr. Kennedy asserts six (6) causes of action: (1) trespass on the case; (2) RICO; (3) trespass on the case—vicarious liability; (4) failure to provide a republican form of government and privacy violations; (5) intentional infliction of emotional distress; and (6) negligence.[82] Mr. Kennedy seeks declaratory and injunctive relief, as well as damages.[83]

### 2.   *Kennedy v. PPL Corp.*, No. 19-212

On January 14, 2019, still undeterred by this Court's rulings in Nos. 18-4086 and 18-4310, Mr. Kennedy now sues PPL Corporation, Joanne H. Raphael, Vincent Sorgi, William H. Spence, Kate E.M. Tercha, Dennis Koze, Crawl Space Repair, the USPS, Megan Brennan, and Thomas Marshall. Mr. Kennedy first alleges these persons violated RICO over the past ten (10) years by "misstat[ing], misinform[ing] and fil[ing] fake financial records on government websites . . . and us[ing] alternative metrics to avoid generally accepted accounting principles."[84] Mr. Kennedy suggests the USPS and PPL filed false SEC Form 10-K documents on the Securities and Exchange Commission's website.[85] He alleges the USPS "incurred $65 billion of cumulative losses since the 2007-2009 recession, according to President Trump, evidence [of] RICO financial fraud with no intent to earn profits and destroy competition."[86]

Disregarding Judge Schmehl's October 12, 2018 Order in No. 18-4310, Mr. Kennedy once again raises claims regarding his living conditions at his residence. He alleges Ms. Tercha and Mr. Koze "falsely advertised about [the] rental building in 2016" and they "failed to provide [him] with a private, secure mailbox at [the] rental building."[87] He faults the USPS for not "enforce[ing] its security mailbox laws at the rental building."[88] Mr. Kennedy contends Mr. Koze "practices medicine without a license in the shared space community room," and the "shared space kitchen and bathroom are unsanitary and are no longer kept clean, and may be at times contaminated from

12

the unsterilized medical equipment and devices, which are also not disposed of properly."[89] He suggests there is no modern fire protection at the residence, and there is lead and other toxins in the ceiling and walls.[90] The kitchen and bathroom have mold.[91] Mr. Kennedy claims he and other tenants "may also have severe health problems due to the EMF pollution and from rental building toxins, CSR toxins, Monsanto Corporation Glyphosate and PPL Smarter [sic] Meter in and on the said building."[92] He asserts there are exposed wires in his bedroom and the community room, and he is "harmed by radiation from PPL Corporation Smart Meter, which is located proximate to [his] room on the second floor."[93] Mr. Kennedy also contends Mr. Koze "for his Crawl Space Repair company's business purposes burns toxic materials including but not limited to rotted beams, damaged floor joists, sill plates, box sills, old damaged insulation, and mildew and fungus growth."[94] Mr. Kennedy alleges Mr. Koze and Ms. Tercha "breached the contract with [him] concerning tenancy on 12-30-2018 in a Notice and letter signed by Koze on behalf of Tercha."[95]

Mr. Kennedy asserts eight (8) causes of action in his Complaint: (1) trespass; (2) RICO; (3) trespass on the case—vicarious liability; (4) failure to provide a republican form of government; (5) negligence; (6) failure to provide safe living conditions; (7) breach of contract; and (8) fraud material omission.[96] He seeks damages and an order declaring the "rental building off-limits for human domicile."[97]

## II. Analysis

Mr. Kennedy will always swear to being a pauper and proceed *in forma pauperis* because it appears he is incapable of paying the fees to commence a federal case. He takes advantage of free filing to bring malicious meritless cases. He repeats claims in repeated lawsuits. If he had to pay the $400 in fees, he may not bring so many frivolous cases based on the same events. And, the public would have the benefit of over $4,400 in filing fees for the 2018 cases alone.

13

Congress created *in forma pauperis* "to ensure that indigent litigants have meaningful access to the federal courts."[98] The purpose of *in forma pauperis* is to ensure equal access to the justice system regardless of a person's inability to pay court filing and administrative fees.[99] Congress did not intend the grant of *in forma pauperis* status as a free pass to harass citizens and burden the federal courts with malicious lawsuits. Federal law, 28 U.S.C. § 1915(e)(2)(B), requires we dismiss the complaint if it is malicious or fails to state a claim. "A court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant."[100] "A district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims."[101]

Congress also recognizes indigent persons can abuse their cost-free access to the court through their pauper status.[102] Under 28 U.S.C. § 1915(e), Congress set a mechanism requiring courts to deny a litigant from proceeding *in forma pauperis* if we find the litigant's claims is frivolous.[103] Our Court of Appeals held a claim is deemed frivolous under 28 U.S.C. § 1915(e) "if, after considering the contending equities, the court determines that the claim is: (1) of little or no weight, value, or importance; (2) not worthy of serious attention; or (3) trivial."[104] We are required to "assess an *in forma pauperis* complaint from an objective standpoint in order to determine whether the claim is based on an indisputably meritless legal theory or clearly baseless factual contention."[105]

We have discretionary authority to revoke *in forma pauperis* status from litigants who abuse their status under 28 U.S.C. § 1915(a).[106] Courts also have "inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to

14

carry out Article III functions."[107] Our Court of Appeals held courts are within their power to deny a non-prisoner litigant's *in forma pauperis* status if the litigant abuses their pauper status by excessively filing claims resulting in dismissal.[108] A claim is trivial when a court determines "the record supports a finding that a reasonable paying litigant would not have filed the same claim after considering the costs of suit."[109]

## A. Mr. Kennedy's RICO claims lack merit.

Mr. Kennedy raises RICO claims for most harm. Last year in No. 19-163, he alleged the defendants violated RICO from 2008 until the present by "misstat[ing], misinform[ing] and fil[ing] fake financial records on government websites, supported by self-authenticating digital evidence under Rule 902."[110] In No. 19-212, Mr. Kennedy now alleges the USPS and PPL violated RICO by filing fake financial records on government websites, including the Securities and Exchange Commission's website. Mr. Kennedy's RICO claims remain meritless.

The RICO statute provides "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court."[111] Nothing in the Complaints, however, provides a plausible, non-speculative basis for concluding Mr. Kennedy suffered injury to business or property which would give him standing to raise a RICO claim. To establish standing under § 1964(c), "a RICO plaintiff [must] make two related but analytically distinct threshold showings . . . : (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962."[112] Congress, through RICO, does not provide a cause of action where the damages alleged are "speculative."[113] Mr. Kennedy's RICO claims are based upon his speculations regarding the Defendants' actions. He does not plead injury to business or

15

property caused by a pattern of racketeering activity.[114] Accordingly, his RICO claims will be dismissed.

**B. We dismiss Mr. Kennedy's state law claims for lack of subject matter jurisdiction.**

Mr. Kennedy's remaining claims in both of the new cases allege various torts under state law. To the extent Mr. Kennedy asserts a legitimate claim under state law, he has failed to demonstrate our subject matter has jurisdiction over such claims.[115] Because we dismiss Mr. Kennedy's RICO claims, we will not exercise supplemental jurisdiction over state law claims.

The only independent basis for jurisdiction over these possible state law tort claims is 28 U.S.C. § 1332(a), which grants us jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Mr. Kennedy does not, and cannot in good faith, allege the parties are completely diverse, as it suggests Mr. Kennedy and some of the named Defendants are citizens of Pennsylvania.[116] We dismiss Mr. Kennedy's state law claims for lack of subject matter jurisdiction and as filed maliciously.[117]

**C. We restrict Mr. Kennedy's further abuse of *in forma pauperis.***

We may revoke Mr. Kennedy's pauper status under 28 U.S.C. § 1915(a) because we find he abuses his cost-free access to the Court. Abusive litigation includes a litigant commencing an overabundance of actions through *in forma pauperis* privileges, which courts ultimately dismiss as frivolous.[118]

Our Court of Appeals has approved revoking *in forma pauperis* status to abusive litigants. In *Deutsch*, our Court of Appeals indicated in dicta "extreme circumstances" might justify revoking a litigant's *in forma pauperis* status even though the litigant otherwise qualifies.[119] In *Douris v. Middletown Twp.*, our Court of Appeals upheld a district court's revocation of a litigant's

16

pauper status for abusive filings, which it found justified an "extreme circumstance."[120] In *Douris*, the litigant filed nine suits in this Court over ten years—all lacking merit and expending significant judicial resources.[121] Although the litigant otherwise qualified for pauper status, the district court revoked the litigant's pauper status citing the litigant's abusive filings as "extreme circumstances" justifying revocation.[122] Our Court of Appeals affirmed the district court's finding the litigant's abusive litigation constituted an "extreme circumstance."[123] Our Court of Appeals cited the litigant's numerous suits which ultimately ended in dismissal or summary judgment, which our Court of Appeals cited as justifying its finding.[124]

We may deny pauper status for "extreme circumstances" because the litigant filed excessive meritless claims. In *Aruanno v. Davis*, a litigant filed thirty-three cases over three years while proceeding *in forma pauperis*— thirteen of which the court previously dismissed as frivolous.[125] The district court created a discretionary rule—mirroring 28 U.S.C § 1915(g) for *prisoners* seeking to proceed as a pauper—requiring courts to deny a litigant's pauper status if the litigant previously filed three or more suits with the benefit of *in forma pauperis* status which ended in dismissal, unless the litigant could show he faced imminent danger.[126] Because the court had previously dismissed more than three such suits and he was not in imminent danger, the court ordered the litigant to show cause why he should not be denied to proceed *in forma pauperis*.[127] The litigant failed to do so.[128] The court used its discretionary power under 28 U.S.C § 1915(a) and found the litigant's abuse of the judicial system to warrant denial of his *in forma pauperis* status.[129]

We may deny *in forma pauperis* status for abusive litigation. In *Visser v. Supreme Court of California*, a court of appeals denied a litigant pauper status because he sought to proceed as a pauper in eleven meritless actions which the court of appeals described as "manifestly abusive."[130]

Consistent with *Visser*, a California district court in *Bontemps v. Sotak* refused to consider revoking a litigants' pauper status unless the court previously dismissed ten or more of the litigant's suits for being frivolous.[131]

We also are mindful of the limits on a bar from filing all future cases. One court of appeals refused to revoke a litigant's pauper status for abusive litigation as too punitive. In *Miller v. McDonald*, the litigant had a history of excessively commencing meritless actions under his pauper status.[132] Because of his history of abusive litigation, the district court enjoined the litigant from commencing actions until he paid the filing fees.[133] The court of appeals vacated the district court's injunction and held restricting the litigant from proceeding *in forma pauperis* in future litigation too broad and the punitive action failed to provide the litigant access to the courts in the future.[134]

The United States Court of Appeals for the Second Circuit permits district courts to issue limited injunctions restricting abusive litigants' access to the courts, finding district courts have the "power and the constitutional obligation to protect [its] jurisdiction from conduct which impairs [its] ability to carry out Article III functions."[135] This guidance applies especially when litigants "abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings."[136] In *Bankhead v. Kelly*, a New York district court acknowledged it possessed the power to deny a plaintiff from proceeding *in forma pauperis*, but stopped short of revoking his pauper status in the case.[137] The litigant in *Bankhead* previously filed numerous meritless actions through his pauper status.[138] The New York district court declined to exercise its ability to revoke pauper status for abusive litigation and instead warned the litigant if he continued to commence meritless action through his pauper status, the court would then revoke his *in forma pauperis* status.[139]

18

In balancing the harm from abusing pauper status with a punitive bar to all lawsuits, we will allow Mr. Kennedy *in forma pauperis* status for these two cases. Mr. Kennedy filed thirteen meritless cases in less than a year. We granted him *in forma pauperis* status in each case. He avoided paying $5200 for filing cases which lack merit. Each meritless case required public servants to expend limited resources to address frivolous allegations not cognizable in federal court. We allow Mr. Kennedy to avoid the filing fees in these last two cases before us today. But, we order him to show cause as to why he should be permitted to file complaints without paying the filing fees in future cases on issues already before the Court or unless he faces imminent danger. We also direct our Clerk to assign Mr. Kennedy's future filings to our docket to ensure he does not shop his conduct.

## III. Conclusion

We grant Mr. Kennedy leave to proceed *in forma pauperis* and dismiss his Complaints. Mr. Kennedy's remaining Motions will be denied. Mr. Kennedy will not be given leave to amend in either case because amendment would be futile. As noted above, Mr. Kennedy is a frequent filer who has been warned filing new cases regarding events alluded to in previous lawsuits could result in restriction of his filing privileges. Despite the warning, Mr. Kennedy filed these two civil actions. In light of Mr. Kennedy's filing history, we require Mr. Kennedy to show cause as to why he should not be barred from filing civil non-*habeas* cases related to facts already litigated without prepayment of the filing fee and administrative fee unless he pleads imminent danger.[140]

---

[1] Beside the cases discussed, Mr. Kennedy also filed: *Kennedy v. Comm'r of Soc. Sec.*, No. 18-2522 (E.D. Pa.) (filed June 14, 2018) (pending Social Security proceeding before Judge Jones); *Kennedy v. Equifax, Inc.*, No. 18-214 (E.D. Pa.) (filed Jan. 16, 2018) (pending proceedings before Judge Schmehl); *Kennedy v. Nester*, No. 17-4845 (E.D. Pa.) (filed Oct. 27, 2017) (assigned to Judge Smith and voluntarily dismissed by Mr. Kennedy); *Kennedy v. Dent*, No. 17-4844 (E.D. Pa.) (filed Oct. 27, 2017) (assigned to Judge Smith and voluntarily dismissed by Mr. Kennedy); *Kennedy v. Muldowney*, No. 17-4599 (E.D. Pa.) (filed Oct. 13, 2017) (assigned to Judge Jones and

dismissed without prejudice under a notice of voluntary dismissal); *Kennedy v. United States*, No. 17-4579 (E.D. Pa.) (filed Oct. 12, 2017) (assigned to Judge Jones and dismissed without prejudice under a notice of voluntary dismissal).

2 Compl., *Kennedy v. Comm'r*, No. 18-257 (E.D. Pa.) (ECF Doc. No. 3).

3 Order, *Kennedy v. Comm'r*, No. 18-257 (E.D. Pa.) (ECF Doc. No. 2). The earlier case (No. 18-214) remains pending before Judge Schmehl.

4 *Kennedy v. Comm'r, Dep't of the Treasury Internal Revenue Serv.*, No. 18-257, 2018 WL 3020161, at *1, *3 (E.D. Pa. June 18, 2018).

5 *Id.* at *2.

6 Compl., *Kennedy v. Hanna*, No. 18-977 (E.D. Pa.) (ECF Doc. No. 3).

7 *Id.*

8 *Id.*

9 Order, *Kennedy v. Hanna*, No. 18-977 (E.D. Pa.) (ECF Doc. No. 2).

10 Compl., *Kennedy v. Commonwealth*, No. 18-3374 (E.D. Pa.) (ECF Doc. No. 2).

11 *Id.*

12 *Kennedy v. Pennsylvania*, No. 18-3374, 2018 WL 4100670, at *3 (E.D. Pa. Aug. 24, 2018).

13 *Id.* at *2.

14 *Id.* at *3.

15 Compl., *Kennedy v. Jones*, No. 18-3442 (E.D. Pa.) (ECF Doc. No. 2).

16 *Kennedy v. Jones*, No. 18-3442, 2018 WL 4538419, at *5 (E.D. Pa. Sept. 21, 2018).

17 *Id.* at *1.

18 *Id.*

19 *Id.* at *5.

20 Am. Compl, *Kennedy v. Jones*, No. 18-3442 (E.D. Pa.) (ECF Doc. No. 10).

21 *Kennedy v. Pennsylvania*, No. 18-3442, 2018 WL 5977968, at *9 (E.D. Pa. Nov. 14, 2018).

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] Compl., *Kennedy v. Getz*, No. 18-3532 (E.D. Pa.) (ECF Doc. No. 2).

[26] *Id.* at 6.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 2.

[30] *Id.* at 5.

[31] *Kennedy v. Getz*, No. 18-3532, 2018 WL 4094967, at *4 (E.D. Pa. Aug. 27, 2018).

[32] *Id.* at *3.

[33] *Id.*

[34] *Id.* at *4.

[35] Compl., *Kennedy v. Romano*, No. 18-3648 (E.D. Pa.) (ECF Doc. No. 2).

[36] *Kennedy v. Romano*, No. 18-3648, 2018 WL 4566148, at *4 (E.D. Pa. Sept. 24, 2018).

[37] *Id.*

[38] Order, *Kennedy v. Romano*, No. 18-3648 (E.D. Pa.) (ECF Doc. No. 8).

[39] Compl., *Kennedy v. Univ. of Notre Dame du Lac*, No. 18-3747 (E.D. Pa.) (ECF Doc. No. 1).

[40] *Kennedy v. Univ. of Notre Dame du Lac*, No. 18-3747, 2018 WL 4356771, at *2 (E.D. Pa. Sept. 12, 2018).

[41] *Id.*

[42] Compl., *Kennedy v. Commonwealth*, No. 18-4071 (E.D. Pa.) (ECF Doc. No. 2).

[43] *Id.* at 1.

[44] *Kennedy v. Pennsylvania*, No. 18-4071, 2018 WL 4635774, at *2 (E.D. Pa. Sept. 27, 2018).

[45] *See Kennedy v. Monsanto Company*, No. 18-4086 (E.D. Pa.).

[46] Compl. at 7, Kennedy *v. Monsanto Company*, No. 18-4086 (E.D. Pa.) (ECF Doc. No. 2).

[47] *Id.* at 8.

[48] *Id.* at 10.

[49] *Id.* at 8.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* at 9.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.* at 11.

[59] *Id.* at 2-11.

[60] *Id.* at 1-2, 12-14.

[61] *Kennedy v. Monsanto Company*, No. 18-4086, 2018 WL 4615855, at *3 (E.D. Pa. Sept. 26, 2018).

[62] *Id.*

[63] *See Kennedy v. Commonwealth*, No. 18-4310 (E.D. Pa.).

[64] *See generally* Compl. at 1-12, *Kennedy v. Commonwealth*, No. 18-4310 (E.D. Pa.) (ECF Doc. No. 2).

[65] *Id.* at 4.

[66] *Id.*

[67] *Kennedy v. Pennsylvania*, No. 18-4310, 2018 WL 4953036, at *3 (E.D. Pa. Oct. 12, 2018).

[68] *Id.*

[69] *Id.* at *4.

[70] *Id.* (citing *Abdul-Akbar v. Watson*, 901 F.3d 329, 333 (3d Cir. 1990)).

[71] Compl., *Kennedy v. Leeson*, No. 18-4414 (E.D. Pa.) (ECF Doc. No. 2).

[72] *Id.* at 1.

[73] *Kennedy v. Leeson*, No. 18-4414, 2018 WL 5046674, at *2 (E.D. Pa. Oct. 17, 2018).

[74] ECF Doc. No. 2, at 6.

[75] *Id.* at 1-2.

[76] *Id.* at 2.

[77] *Id.* at 5.

[78] *Id.*

[79] *Id.* at 10.

[80] *Id.* at 7.

[81] *Id.* at 8.

[82] *Id.* at 4-13.

[83] *Id.* at 14-16.

[84] ECF Doc. No. 2, at 6-7.

[85] *Id.* at 7.

[86] *Id.*

[87] *Id.* at 10.

[88] *Id.* at 11.

[89] *Id.*

[90] *Id.*

[91] *Id.* at 11-12.

[92] *Id.* at 12.

[93] *Id.*

[94] *Id.* at 12-13.

[95] *Id.* at 13.

[96] *Id.* at 3-14.

[97] *Id.* at 15-16.

[98] *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

[99] *Jones v. Zimmerman*, 752 F.2d 76, 78-79 (3rd Cir. 1985).

[100] *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995).

[101] *Brodzki v. CBS Sports*, No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

[102] *Nietzke*, 490 U.S. at 324.

[103] *Ball v. Famiglio*, 726 F.3d 448, 462 n.18 (3rd Cir. 2013).

[104] *Deutsch*, 67 F.3d at 1082.

[105] *Id.* at 1086.

[106] *Aruanno v. Davis*, 168 F. Supp. 3d 711, 715 (D.N.J. 2016).

[107] *In re McDonald*, 489 U.S. 180, 185 n.8 (1989) (internal quotations omitted).

[108] *Douris v. Middletown Twp.*, 293 Fed. Appx. 130, 132 (3rd Cir. 2008).

[109] *Deutsch*, 67 F.3d at 1089.

[110] ECF Doc. No. 2, at 10.

[111] 18 U.S.C. § 1964(c).

[112] *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (footnote omitted).

24

[113] *Id.* at 495 (speculative damages were "predicated exclusively on the *possibility* that future events might occur" could not form the basis of a RICO injury).

[114] *See Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (explaining "injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest").

[115] *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

[116] *See Lincoln Ben. Life Co.,* 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).

[117] Many of Mr. Kennedy's claims demonstrate maliciousness identical to ones he asserted earlier. Mr. Kennedy's Complaint in No. 19-212 reiterates the claims regarding various conditions at his residence raised in Nos. 18-4086 and 18-4310. We dismissed those previous Complaints. This dismissal "does not give him the right to file [a third] lawsuit based on the same facts." *Sendi v. NCR Comten, Inc.*, 624 F. Supp. 1205, 1207 (E.D. Pa. 1986); *see Walton v. Eaton Corp.*, 563 F.2d 66, 61 (3d Cir. 1977) (en banc) ("[T]he court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purposes of circumventing the rules pertaining to the amendment of complaints."); *Brodzki*, 2012 WL 125281, at *1. As to No. 19-163, if Mr. Kennedy is upset about actions the defendants have taken in No. 18-977, he may raise those concerns with the Court in the case, not another lawsuit. To the extent No. 19-163 raises claims duplicating those in No. 18-977, they are also malicious, as Mr. Kennedy has already proceeded on those claims.

[118] *See Deutsch*, 67 F. 3d at 1086-87.

[119] *Deutsch*, 67 F.3d at 1084 n.5.

[120] 293 Fed. Appx. at 132.

[121] *Id.* at 131.

[122] *Id.* 132.

[123] *Id.*

[124] *Id.* at 132-33.

[125] 168 F. Supp. 3d 711, 713 (D.N.J. 2016).

[126] *Id.* at 716.

[127] *Id.*

[128] *Id.* at 718-719.

[129] *Id.* at 713.

[130] 919 F.2d 113, 114 (9th Cir. 1990).

[131] No. 09-2115, 2013 U.S. Dist. LEXIS 6799, *11 (E.D. Cal. Jan. 16, 2013).

[132] 541 F.3d 1091, 1094-1095 (11th Cir. 2008).

[133] *Id.* at 1094.

[134] *Id.* at 1098.

[135] *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984).

[136] *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000).

[137] 13-CV-04577 (NGG), 2013 U.S. Dist. LEXIS 164517, *24-25 (E.D.N.Y. Nov. 19, 2013).

[138] *Id.* *6-10.

[139] *Id.* at *25.

[140] *See Abdul-Akbar v. Watson*, 901 F.3d 329, 333 (3d Cir. 1990) ("When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction and contempt to protect its process.").